**Opinion filed September 30, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00070-CV

_____

## IN THE INTEREST OF I.J., III, A CHILD

On Appeal from the 318th District Court

Midland County, Texas

Trial Court Cause No. FM 55,067

## M E M O R A N D U M   O P I N I O N

The trial court entered an order that terminated the parental rights of the parents of T.H. and I.J., III (I.J.).[1]  The father of I.J. appeals from the termination order and, in two issues on appeal, challenges the legal and factual sufficiency of the evidence to support the finding that termination of his parental rights is in the best interest of I.J.  We affirm.

Termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001 (West 2014).  To determine on appeal

---

[1]The mother of the children has not filed an appeal, nor has the father of T.H.

if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that Appellant committed four of the acts listed in Section 161.001(1). The trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child, that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that Appellant had constructively abandoned the child, and that Appellant had failed to comply with the provisions of a court order stating the actions necessary for him to obtain the return of the child. *See id.* § 161.001(1)(D), (E), (N), (O). Appellant does not challenge the findings made pursuant to Section 161.001(1)(D), (E), or (O). Any one of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the child's best interest. *See id.* § 161.001. The trial court found that termination was in the child's best interest. *See id.* § 161.001(2).

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a

child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department of Family and Protective Services became involved with I.J. and T.H. in 2012 when the Department received an intake call regarding the neglectful supervision, physical abuse, and physical neglect of the children while in the care of their mother. The children were removed after the parents failed to cooperate with the Department's Family Based Safety Services. I.J. was not placed with Appellant because Appellant and the person with whom he lived had a recent drug possession charge. The Department attempted to place the children with relatives, but the children were ultimately placed in separate foster homes.

Daisy Campos, a caseworker for the Department, testified at trial that drugs, alcohol, and domestic violence were issues involved in the removal. She said that the home where the children lived with their mother had no running water or electricity, that it smelled of urine, and that "the living conditions were not suitable for a dog to live in." Appellant testified that, due to these conditions, T.H. and I.J.

sometimes stayed with Appellant or came to his house to eat or bathe. Campos testified that the children were in danger while living in the mother's home and that they had never lived in a stable environment until they were placed in foster care.

It is undisputed that Appellant did not comply with the provisions of the family service plan as ordered by the trial court. After removal, Appellant did not regularly visit I.J. and did not even start any of his court-ordered services. Appellant was incarcerated at the time of the final hearing in this case. The record shows that Appellant was a convicted felon; that he has been arrested "countless times," including arrests for possession of a controlled substance, burglary, forgery, gambling, and burglary of a coin-operated machine; and that he has "continuously" been involved with criminal activities.

I.J. was eleven years old at the time of trial and was living in a foster home; however, that home was temporary and was not going to be a permanent placement for him. Campos testified that I.J. would like to be adopted by a relative. Campos testified that she believes I.J. is adoptable and that the relative with whom I.J. wants to live may be willing and able to adopt him in the future. In open court, however, I.J. informed the trial court that he did not want to be adopted and that he did not want either of his parents' rights to be terminated.

I.J. loves his father and vice versa, and they have a bonded relationship. Appellant testified that termination of his parental rights "would destroy" I.J. The record also shows that I.J. has had trouble adjusting to foster care and that he misses his siblings.

Both Campos and Amanda Baxter, a CASA volunteer who was T.H.'s and I.J.'s guardian ad litem, testified that they believed that termination of all of the parents' rights would be in the children's best interest. Baxter testified, however, that Appellant played an important role in the children's lives, and she thought it

would be beneficial to the children that Appellant not be completely removed from their lives. According to Baxter, the children have a strong desire for a family bond, but the parents are unable to provide for the emotional and physical needs of the children. Baxter testified that Appellant's heart was in the right place, that he had a strong bond with both I.J. and T.H., that he loved the children more than anything in the world, but that he failed to follow through on his promises to do what was necessary to have the children returned to him. He had made "no effort" in that regard. According to Baxter, the children had been disappointed time after time, and they needed a safe, stable home with a loving, adoptive family.

Campos also testified that the children needed a family, a stable home, electricity, and food. Campos testified that Appellant cannot provide a stable home. Appellant disagreed. He testified that he owned his home and that he was due to be released from incarceration soon. Appellant explained that, around the time that I.J. was removed by the Department, Appellant "was up in [his] addiction" to crack cocaine, which caused him to be irresponsible and make bad choices. He said that he had been clean for about seven or eight years but had relapsed not long before the Department's involvement in this case. Appellant admitted to being under the influence "once or twice" when he was around I.J. but said that he never used drugs in front of I.J. or brought drugs into his home when I.J. was there. Appellant asked for one more chance to prove himself; he vowed to stay clean, complete the court-ordered services, and take care of both I.J. and T.H. even though Appellant was not the biological father of T.H. Appellant did not believe that it would be in I.J.'s best interest to terminate Appellant's parental rights.

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or

conviction that it would be in I.J.'s best interest for Appellant's parental rights to be terminated. Appellant was aware of the deplorable living conditions at the mother's residence, yet he allowed I.J. to remain living in those conditions. Appellant was incarcerated at the time of trial, had an extensive criminal history, relapsed into his crack cocaine addiction while he was a joint managing conservator of I.J., and failed to follow through with any of the court-ordered services that were necessary for Appellant to obtain the return of I.J. Although I.J. expressed a desire that Appellant's rights not be terminated, the testimony showed that I.J. needs a stable home and that Appellant is not able to provide a stable home for I.J. The evidence is both legally and factually sufficient to support the trial court's best interest finding. Appellant's first and second issues are overruled.

We affirm the trial court's order of termination.


JOHN M. BAILEY

JUSTICE


September 30, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.